**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

| | |
|---|---|
| **Sean Markley,** | |
| *Plaintiff,* | |
| v. | Civil Action No.: _____ |
| **Inter-Op.Net, Inc.,** | JURY TRIAL DEMANDED |
| *Defendant.* | |

## COMPLAINT

Plaintiff Sean Markley, by and through undersigned counsel, files this Complaint against Defendant Inter-Op.net, Inc. on the grounds set forth as follows:

### NATURE OF THE ACTION

1.      This is an action[1] to seek redress from Inter-Op.net, Inc.'s ("Inter-Op") unlawful discrimination and retaliation on the basis of religion and genetic information in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §§2000e *et seq.* ("Title VII"), the Genetic Information Non-Discrimination Act of 2008, 42 U.S.C. § 2000ff *et seq.*, ("GINA"), and the Virginia Human Rights Act, Va. Code §§ 2.2-3900 *et seq.*, ("VHRA") and in support thereof, Plaintiff states as follows:

### JURISDICTION AND VENUE

2.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345 as Plaintiff lodges claims under federal law.

---

[1] This case is related to Civil Action No.: 2:22-cv-00442-EWH-LRL and is brought separately to ensure compliance with the requirement that Plaintiff exhaust all administrative remedies prior to commencing this action. A motion to consolidate cases was filed in the above-referenced docket contemporaneously with the filing of this action.

3.      Venue is proper in the Eastern District pursuant to L.R. 3(C) and 28 U.S.C. § 1391(b)(2) as the conduct complained of herein occurred in this district and Defendant maintains an office in this district and conducts substantial business in this district.

## PARTIES

4.      Plaintiff Sean Markley is an internet technology ("IT") professional and former Inter-Op employee who holds sincere religious beliefs that prohibit him from receiving any of the currently available COVID-19 vaccines (as more fully discussed below).

5.      Defendant Inter-Op is a Virginia corporation and Information Technology firm that provides IT support services to corporate and government clients. At all times relevant, Inter-Op employed more than fifteen (15) employees and was Mr. Markley's former employer. Inter-Op is therefore subject to Title VII, which mandates employers (such as Inter-Op) reasonably accommodate an employee's (such as Mr. Markley) sincerely held religious beliefs.

6.      At all times relevant, Inter-Op was engaged in an industry affecting commerce and employed more than fifty people and therefore is an "employer" as intended by Section 201(2)(B)(i) of GINA.

## ADMINISTRATIVE PROCEDURES

7.      On October 31, 2022, Mr. Markley filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") against Inter-Op alleging Defendant discriminated against him on the bases of religious and genetic information discrimination and retaliated against him.[2]

8.      The above-referenced charge was filed within 300 days of the last date of discrimination.

---

[2] This is Mr. Markley's second charge; at the time he filed his first charge with the EEOC, he had not yet been terminated.

9.      On November 7, 2022, the EEOC issued to Mr. Markley a Letter of Determination and Notice of Rights, including Mr. Markley's right to sue within a ninety-day period of the date Mr. Markley received the aforesaid Letter. Plaintiff did not request or compel production of the Letter.

10.     Because Mr. Markley timely filed his Charge of Discrimination alleging violations of GINA and Title VII and because the EEOC issued Mr. Markley his Notice of Right to sue within 90 days of commencement of this action, all conditions precedent required to maintaining this lawsuit have been satisfied.

## STATEMENT OF FACTS

11.     Mr. Markley is a 52-year-old retired Navy Chief Petty Officer, a husband to his wife of 30 years, a father to four children, and a 100% disabled veteran who holds a TS/SCI security clearance. Mr. Markley was also a stellar employee who served Inter-Op dutifully for his entire tenure with the company.

12.     Mr. Markley is also a religious man who sincerely holds beliefs that, in being vaccinated with any of the currently available COVID-19 vaccines, Mr. Markley would be cooperating with, and complicit in, abortion – the ending of an innocent human life – and that such would constitute a sin against God and a violation of His Commandments, for which Mr. Markley would be held morally accountable by God.

13.     At the time Inter-Op hired Mr. Markley, it did not have or maintain a policy requiring its employees to be vaccinated against COVID-19.

14.     At all times relevant, Inter-Op is and was a for-profit corporation and a government contractor.

15.     At all times relevant, Inter-Op maintained and enforced its own COVID-19 vaccination policy and was not subject to any obligation to do so from the United States or Commonwealth of Virginia.

16.     In August 2021, Mr. Markley's supervisor, Mike Bechtel, called Mr. Markley and advised Mr. Markley that he was required to complete a Vaccination Attestation Form, which he would be receiving via e-mail. Upon receipt of the email, Mr. Markley learned the Vaccination Attestation Form was not mandatory, contrary to Mr. Bechtel's assertion. As a result, Mr. Markley elected to forego completing the form.

17.     This upset Mr. Bechtel and he questioned Mr. Markley as to why he did not submit the form and attempted to pressure Mr. Markley into doing so.

18.     A few weeks later, in September 2021, Mr. Markley was informed he was required to begin testing for COVID-19 on every three (3) days, including Saturdays and Sundays if such a day fell on the third day after a prior test. Due to the unreasonable and unduly burdensome nature of this request, Mr. Markley requested to test on Mondays and Thursdays in satisfaction of Inter-Op's request. Mr. Bechtel did not deny Mr. Markley's request but instead, placed unreasonable restrictions upon it, including requiring that Mr. Markley take off work to test, include him in emails, and further required Mr. Markley to miss work without pay, pay for his tests out-of-pocket, and otherwise subjected Mr. Markley to harassment while Mr. Markley was present at work.

19.     In October 2021 and due to the restrictions and significant change in work environment stemming from Mr. Markley's request to test Mondays and Thursdays, Mr. Markley asked whether he could submit a religious accommodation request. In response, Mr. Bechtel advised "it wouldn't do [Mr. Markley] any good."[3] Mr. Markley declined to do so based upon this

---

[3] Mr. Markley perceived the refusal to allow him to submit a religious accommodation request a *de facto* denial of his request.

representation but informed Mr. Bechtel of his sincerely held religious beliefs and further advised if things changed, he had a request ready to submit.[4]

20.     For the next month, Mr. Markley fully complied with all testing requirements, including paying for the tests out of his own pocket and losing pay due to being forced to take unpaid time off to submit to testing.

21.     Then, in early October 2021, Mr. Bechtel contacted Mr. Markley to inquire from whom Mr. Markley was obtaining his testing supplies. Mr. Markley advised Mr. Bechtel of his vendor. During this conversation, Mr. Markley also inquired as to a lead position that would be opening up in the near future as he wanted to apply for the position and believed he would be a good fit based upon his qualifications. Mr. Bechtel dismissed Mr. Markley's inquiry by responding, "I didn't think you'd be interested in it based on what's going on" and then continued to tell Mr. Markley "Management's perception of you isn't good because you're not a team player."

22.     In referring to me as "not a team player" Mr. Bechtel was alluding to the fact that Mr. Markley was unvaccinated.

23.     Mr. Markley continued to test every Monday and Thursday, as he has in September, for the entire month of October and into November 2021.

24.     In November 2021, Mr. Markley's supervisor, Sonja Fiedler asked Mr. Markley if he was alright and if there was something wrong as she had noticed he was not very talkative and "just seemed down." Mr. Markley responded that he felt as though he was being harassed because of his sincerely held religious beliefs and inability to be vaccinated against COVID-19.

---

[4] Mr. Markley e-mailed a document titled "RFRA.doc" to his uscg.mil email account and saved it to his USCG drive so it was prepared and ready to submit at any time. He also sent copies to two colleagues to ensure it was not removed without his knowledge.

Specifically, Mr. Markley informed Ms. Fielder about the change in work environment, Mr. Bechtel's newly adopted approach in refusing to include Mr. Markley in work-related conversation as he had prior to learning of his religious beliefs, and specifically referenced how Mr. Bechtel brushed off his inquiry about a job that, prior to learning Mr. Markley's sincerely held religious beliefs, Mr. Bechtel would have brought to Mr. Markley's attention on his own volition. But now, Mr. Bechtel was hiding the soon-to-be available position from him.

25.     In December 2021, Mr. Markley continued to test on his own, pay out-of-pocket for the tests, and loss income due to the forced unpaid leave he had to take in order to maintain his employment.

26.     As a result, Mr. Markley filed an inquiry and intake appointment with the EEOC in light of being forced Mr. Markley to test on a weekly basis and such requirement violated his right to be free from genetic information discrimination. Specifically, Mr. Markley asserted that the weekly tests constituted genetic information discrimination because, based on his genetics, he was not permitted to work without taking leave, losing income, and otherwise losing compensation due to Inter-Op's refusal to pay for the tests it mandated that Mr. Markley take.

27.     In January 2022 and upon learning that the Supreme Court overturned any and all private sector COVID-19 vaccination mandates, Mr. Markley advised Mr. Bechtel he would no longer be testing for COVID-19 as Mr. Bechtel informed Mr. Markley previously that Inter-Op did not have a mandatory COVID-19 vaccination requirement.

28.     Despite this, Mr. Bechtel advised Mr. Markley that he was to now submit a "Testing Attestation Form" and in the event he failed to do so, he would terminate Mr. Markley's employment.

29.     Mr. Markley fully complied with the Testing Attestation Form requirement despite doing so under duress and the blatantly discriminatory animus underpinning this requirement. This continued through March of 2022.

30.     In March 2022, Mr. Markley inquired as to the process by which Inter-Op processed and exchanged information he submitted on his Testing Attestation Form, as well as who received or viewed the information included therein. Mr. Bechtel treated Mr. Markley with disparity and merely responded with a half-hearted, vague, short non-answer.

31.     On March 16, 2022, Mr. Markley called Mr. Bechtel after he had left work early on scheduled paid time off to discuss work, at which time Mr. Bechtel abruptly and without warning told Mr. Markley he was fired and that he needed to turn in his badge immediately. Shocked by this, Mr. Markley asked why he was being fired and Mr. Bechtel merely responded it was due to "personnel changes" – but of course this was not true.

32.     For example, in response to Mr. Markley's question about his performance, Mr. Bechtel said, "You are a great technician and troubleshooter; everyone was happy with your work."

33.     From August 2021 through his termination in March of 2022, Inter-Op repeatedly asked Mr. Markley invasive questions about his medical history and required that he reveal such information if he wished to maintain his employment.

34.     Between August 2021 and March of 2022, Inter-Op denied denied Mr. Markley's request for a religious accommodation on two separate occasions, and despite his sincerely held religious beliefs, Inter-Op terminated Mr. Markley's employment.

35.     Inter-Op demonstrated it knew Mr. Markley had sincerely held religious beliefs prohibiting him from being vaccinated as evidenced by two separate discussions regarding the same.

36.     Despite having no obligation under federal or state law to mandate that Mr. Markley be vaccinated against COVID-19, Inter-Op demanded that Mr. Markley provide Inter-Op genetic information and otherwise demanded that he test while contemporaneously telling Mr. Markley he was not permitted to submit a religious accommodation request.

37.     Despite having no obligation under federal or state law to mandate that Mr. Markley be vaccinated against COVID-19, Inter-Op terminated Mr. Markley because he did not abide by Inter-Op's unlawful demand that he be inoculated with a COVID-19 vaccine–a substance that would have altered his genetic information.

38.     Alternatively, or as an additional reason, Inter-Op terminated Mr. Markley because his sincerely held religious beliefs prohibited him from getting vaccinated.

39.     The unlawful employment practices complained of in the foregoing paragraphs were and are intentional and such intentional acts were done with malice or with reckless indifference to the federally protected rights of applicants for employment including Mr. Markley.

40.     Alternatively, the unlawful employment practices complained of in the foregoing paragraphs were at a minimum, negligent or grossly negligent insofar as Inter-Op had a duty to abide by state and federal laws that prohibit Inter-Op from discriminating on the basis of genetic information and religion.

41.     The aforesaid unlawful employment practices also constitute retaliation on the basis of religion, in that Inter-Op only subjected Mr. Markley to a testing policy because of his religion.

### COUNT I
### RELIGIOUS DISCRIMINATION
### Violation of Title VII

42.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

43.    Plaintiff sincerely holds religious beliefs and is a member of a protected class based on his religion.

44.    Plaintiff is an employee within the meaning of Title VII.

45.    Inter-Op is an employer within the meaning of Title VII.

46.    Title VII forbids an employer from terminating an employee or otherwise refusing to provide an employee with a religious accommodation, absent proof that granting the accommodation would cause it undue hardship. 42 U.S.C. §§ 2000e(j), 2000e-2(a)(1); *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 774 (2015).

47.    This extension of actionable religious discrimination to include a failure to accommodate derives from Title VII's definition of "religion" to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

48.    A plaintiff can therefore make out a prima facie case under Title VII by showing (1) he held a *bona fide* religious belief, the practice of which conflicted with an employment duty; (2) the employer took adverse employment action because of the a plaintiff's inability to fulfill the vaccination policy; and (3) the plaintiff's religious practice was a motivating factor in the employer's decision. *See Abercrombie & Fitch*, 575 U.S. at 775.

49.    Mr. Markley advised Inter-Op, and Inter-Op knew at all times relevant, Mr, Markley held sincere religious beliefs that (1) vaccination is not morally obligatory in principle and so must be voluntary; (2) there is a general moral duty to refuse the use of medical products, including certain vaccines, that are produced using human cells lines derived from direct abortions; (3) a person's informed judgments about the proportionality of medical interventions are to be

respected unless they contradict authoritative Christian moral teachings; (4) a person is morally required to obey his or her sure conscience; and that (5) abortion is a sin and contrary to the teachings of the Christian Church and as a result, a Christian may invoke Church teaching to refuse a vaccine developed or produced using abortion-derived cell lines. Failure to abide by these sincerely held religious beliefs is a dereliction of her primary loyalty to God and, absent an accommodation, Mr. Markley could not comply with Inter-Op's mandatory COVID-19 vaccination without violating his sincerely held religious beliefs.

50.     Mr. Markley informed Inter-Op of this conflict on two separate occasions and expressly sought an accommodation.

51.     In response to learning of Mr. Markley's religion, Inter-Op took an adverse action against Mr. Markley by placing him on mandatory unpaid leave each Monday and Thursday and thereafter, terminating his employment because of his sincerely held religious beliefs. *See* 42 U.S.C. § 2000e-2(a)(1) (actionable adverse actions include "fail[ing] or refus[ing] to hire," "discharg[ing]," or otherwise discriminating with respect to the "terms" and "conditions" of employment).

52.     As a direct and proximate result of the aforesaid complained of conduct and violation of Title VII, Plaintiff sustained pecuniary and non-economic injuries in an amount that exceeds $75,000.00, including lost wages, benefits, retirement funds, the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, attorneys' fees, and costs associated with this action.

//

//

//

## COUNT II
### GENETIC INFORMATION DISCRIMINATION
### Violation of GINA

53.     Plaintiff repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs of this Complaint as fully set forth herein.

54.     Inter-Op is an employer as intended by GINA insofar as at all times relevant, Inter-Op employed 15 or more employees.

55.     Inter-Op's actions violated 42 U.S.C. § 2000ff-1(b). Specifically, Inter-Op violated GINA by using Mr. Markley's genetic information in making employment decisions related to him, including the decision to terminate Mr. Markley's employment.

56.     There are no exceptions to the prohibition on using genetic information to make employment decisions.

57.     As a direct and proximate result of Inter-Op's violation of 42 U.S.C. § 2000ff-1(b), Mr. Markley suffered actual damage including but not limited to failure to gain employment, inconvenience, embarrassment, loss of enjoyment of life, mental anguish and emotional distress.

58.     Inter-Op's violation of 42 U.S.C. § 2000ff-1(b) likely chilled other reasonable persons from submitting maintain their employment.

59.     Inter-Op's violation of 42 U.S.C. § 2000ff-1(b) resulted in other employees, who were not chilled, revealing genetic information with respect to themselves or family members to Inter-Op.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A.     Enter declaratory judgment pursuant to 28 U.S.C. § 2201(a) that Inter-Op's mandatory testing policy and related release of information requirement violates GINA, 42 U.S.C.

§ 2000ff-1(b), by requiring employees to provide health history that would reveal genetic information with respect to themselves or family members;

     B.     Issue a permanent injunction prohibiting Inter-Op, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from making any employment medical inquiries and requiring any health history from the application process in violation of GINA, 42 U.S.C. § 2000ff-1(b);

     C.     Order Inter-Op to make Mr. Markley whole by providing compensation for his pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial;

     D.     Order Inter-Op to make Mr. Markley whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, such as inconvenience, embarrassment, loss of enjoyment of life, mental anguish, and emotional distress in amounts to be determined at trial;

     E.     Order Grisham Farm to pay Mr. Markley punitive damages for its malicious and reckless conduct, as described above, in amounts to be determined at trial;

     F.     Grant such other and further relief as this Court deems necessary and proper in the public interest; and

     G.     Award Mr. Markley attorney's fees and costs of this action.

## JURY TRIAL DEMAND

Plaintiff requests a jury trial on all questions of fact raised by its Complaint.

Dated: November 30, 2022

                          Respectfully submitted,
                          SEAN MARKLEY

              By:    /S/ MICHAEL A. YODER

Michael A. Yoder [VSB 93863]
THE LAW OFFICE OF MICHAEL A. YODER, PLLC
2300 Wilson Blvd., Suite 700
Arlington, VA 22202
Tel: (571) 234-5594
Fax: (571) 327-5554
michael@yoderesq.com
*Counsel for Plaintiff*